IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| MICHAEL McMILLAN and ANN McMILLAN,<br><br>    Plaintiffs,<br><br>vs.<br><br>MORGAN COUNTY, KELLY WRIGHT, individually and as Morgan County Attorney, REED WILDE, CHAD HAWKES, BRUCE SANDERS, DAN HANCOCK, DAVID GARDINER, LYNETTE STEPHENS, and BART SMITH, individually and in their capacity as Morgan County Council Members,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 1:08CV9DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiffs Michael and Ann McMillan's Motion for Partial Summary Judgment on their First Claim for Relief, and Defendants' Motion for Summary Judgment on all claims set forth in Plaintiffs' Complaint. The Defendants include Morgan County, members of the Morgan County Council, and the Morgan County Attorney. On February 3, 2010, the court held a hearing on the motions. At the hearing, Plaintiffs were represented by Benson L. Hathaway and Stephen W. Geary, and Defendants were represented by Gabriel K. White and Tyler Snow. The court took the motions under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the parties' motions. Now being fully

advised, the court enters the following Memorandum Decision and Order.

## BACKGROUND

In 2005, Rex Wilkinson and/or Coventry Cove, LLC ("the developers") sought to subdivide and develop property adjacent to the McMillans' property in Morgan County. The McMillans opposed the development. But, on May 5, 2005, the Morgan County Planning Commission approved the development. On May 17, 2005, the Morgan County Council also approved the development.

The McMillans then appealed the County Council's decision to the Morgan County Board of Appeals. Under Utah Code § 17-27a-701(3)(a)(ii), the Board of Appeals is "the final arbiter of issues involving the interpretation or application of land use ordinances." The Board of Appeals reversed the Morgan County Council's approval of the development and remanded the matter back to the County Council for further proceedings.

After the Board of Appeals' decision, on December 2, 2005, the Morgan County Attorney, Kelly Wright, filed a petition in the Second Judicial District Court of the State of Utah for review and reversal of the Board of Appeals' decision. The County Council approved of the filing of this petition on behalf of the County. The developers also filed their own petition with the state district court. While the County's petition named only the McMillans as the adverse party, the developers' petition named both the McMillans and the Board of Appeals as the adverse parties. The state district court consolidated the two petitions into one action.

Neither the County Council nor the County Attorney appointed independent counsel to defend the Board of Appeals in the developers' state court challenge to its decision. Thus, no independent counsel was ever retained to defend the Board of Appeals against the developers' challenge.

On April 21, 2006, the state district court granted the McMillans' motion to dismiss the County's petition. The court found that "[w]hile the Morgan County Council may not agree with the Board of Appeals' decision, neither the County Council nor the County has a statutory right to seek judicial review of that decision in the District Court." The state court then also granted the McMillans' motion for summary judgment against the developers.

In defending the Board of Appeals' decision against the County's and the developers' challenges, the McMillans incurred attorney fees and costs of $61,668.41 and personal expenses of $10,000. As part of their motion to dismiss the County's petition, the McMillans sought an award of their attorney fees under the private attorney general doctrine. The state court declined their request for attorney fees, reasoning that the McMillans "have not vindicated a strong or societally important public policy" and "the cost of pursuing this defense does not transcend their individual pecuniary interest to the extent it requires subsidization." The McMillans did not request attorney fees in connection with their motion for summary judgment against the developers.

The McMillans brought this action against the County, members of the County Council, and the County Attorney alleging several causes of action based on the County's failure to appoint independent counsel for the Board of Appeals in the state court action and seeking payment of the attorney fees they incurred in the state court action. The McMillans' assert the following causes of action: (1) a claim under Section 1983 for a violation of due process under the Fifth and Fourteenth Amendments to the United States Constitution; (2) a claim under Section 1985(3) for conspiracy to violate civil rights; (3) a claim under Section 1986 for failure to prevent violation of civil rights; (4) a claim under the Utah Constitution, Article 1, Section 22, for takings; and (5) a claim for negligence.

## DISCUSSION

### Cross Motions For Summary Judgment

The McMillans' Motion for Summary Judgment seeks judgment on their first cause of action under 42 U.S.C. § 1983, asserting that there are no material facts in dispute and that Defendants, under color of state law, violated their equal protection and substantive due process rights. As a result of these asserted violations, the McMillans contend that they were damaged in the amount of $71,668.41, which is the amount of attorney fees and costs they incurred in defending the Board of Appeals' decision in the state district court. Defendants, however, also filed a motion for summary judgment on the first cause of action, arguing that the McMillans cannot establish (1) that they held a protected property interest in the Board of Appeals' decision; (2) that the available state remedies were inadequate; or (3) that Defendants' decision to appeal the Board of Appeals' decision "shocks the conscience" of the court.

Defendants' motion for summary judgment also addresses each of the McMillans other causes of action. Defendants argue that the McMillans' claims brought under Sections 1985(3) and 1986 fail as a matter of law because the McMillans are not members of a protected class. In addition, Defendants assert that the McMillans are not entitled to just compensation because Defendants' actions did not amount to a taking. Defendants further contend that the McMillans cannot state a claim for negligence because Defendants did not owe the McMillans any duty to refrain from appealing the Board of Appeals' decision or any duty to appoint counsel to defend the Board of Appeals' decision. Moreover, Defendants argue that the McMillans' claims are barred by the doctrine of waiver and that the individual defendants are entitled to qualified immunity.

The court will address the cross motions on the first cause of action together and then

address Defendant's motion for summary judgment on each of the McMillans' remaining claims.

**A. Section 1983 Claim**

   *1. Due Process Rights*

The McMillans' Section 1983 cause of action alleges that Defendants deprived them of procedural and substantive due process rights when Defendants filed a petition in Utah State Court challenging the Board of Appeals' decision and failed to defend, or appoint counsel to defend, the decision. Courts have recognized that the due process clause of the Fourteenth Amendment "provides protection against arbitrary and oppressive government action." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 766 (10th Cir. 2008). While Section 1983 "does not provide any substantive rights" of its own, it provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979); *Baker v. Mccollan*, 443 U.S. 137, 144 n.3 (1979).

"To state a claim for a violation of due process, plaintiff must first establish that it has a protected property interest and, second, that defendants' actions violated that interest." *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1216 (10th Cir. 2003). "The Supreme Court defines 'property' in the context of the Fourteenth Amendment's Due Process Clause as a 'legitimate claim of entitlement' to some benefit." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). These claims of entitlement generally "arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings." *Dickeson v. Quarberg*, 844 F.2d 1435, 1437 (10th Cir. 1988). The court must examine state law in order to determine whether a non-constitutional, protectable property interest exists. *See Town of Castle*

*Rock v. Gonzales*, 545 U.S. 748, 758 (2005). An "abstract need for, or unilateral expectation of, a benefit does not constitute property." *Hyde Park*, 226 F.3d at 1210.[1]

In this case, while the state court ruled that Defendants had no statutory basis for challenging the decision of the Board of Appeals, it did not rule that the McMIllans had a property interest in the Board of Appeals' decision nor did it address or comment on whether state law required the County to defend or appoint counsel to defend the Board of Appeals' decision.

The McMillans claim that under Utah law, if any person challenges the final decision of the Board of Appeals, the County Attorney is statutorily required to defend it because such action should be considered an action against the County. The McMillans rely on a provision of the Utah Code, which provides that "[t]he county attorney shall: (a) defend all actions brought against the county." *Id.* § 17-18-1(7), -1.5(5). Defendants contend that Utah Code Ann. § 17-18-1(7), which states generally that the County Attorney shall defend all actions against the County, is too broad to provide the McMillans with a protectable property interest. With respect to Utah Code Ann. § 17-18-1(7), Defendants argue that the court must determine (1) whether a county board of appeals constitutes "the county" and (2) whether an appeal from the decision of a county board of appeals is "against the county."

Under Utah's County Land Use, Development, and Management Act ("the Act"), each

---

[1] In *Hyde Park*, the plaintiffs claimed that the city council denied their due process rights because it denied the plaintiffs' request for a subdivision even though the plaintiffs claimed that they met all the applicable requirements for a subdivision. *Id.* at 1209. The Tenth Circuit, however, noted that the applicable ordinances did not clearly define "limitations on the City Council's exercise of discretion." *Id.* at 1212. And the court refused to "infer such limits and involve this federal court in a land use regulation dispute which is purely a matter of local concern." *Id.*

county is required to establish an appellate authority to hear appeals from decisions applying land use ordinances. *Id.* § 17-27a-701(1). That appellate authority, the Board of Appeals, "serves as the final arbiter of issues involving the interpretation or application of land use ordinances." *Id.* The Act then provides for the judicial review of the Board of Appeals' decision. *See id.* § 17-27a-801. A challenge to the county's final land use decision may be brought by "[a]ny person adversely affected by a final decision made in the exercise or in violation of the provisions of this chapter." *Id.*

The McMillans assert that the Board of Appeals is undeniably a sub-unit of the County and its decision is the decision of the County. In this case, the state court explicitly found that the Board of Appeals "forms part of the Morgan County government." The McMillans argue that the County Attorney was bound by statute and by the Rules of Professional Conduct to defer to and take direction from the decision of the Board of Appeals. Utah Rule of Professional Conduct 1.13 identifies an elected attorney as "the legal advisor . . . to the County as an entity." *See Salt Lake County Comm'n v. Short*, 1999 UT 73, ¶ 15, 985 P.2d 899. "[A]s an elected attorney for the County, the County Attorney is obligated to follow his client's instructions. In practical terms, the County Attorney does not have the right to second-guess the agent, so long as the agent is acting within the scope of the agent's legal authority." *Id.* at ¶ 18.

However, both parties agree that Utah courts have recognized boards of appeals as quasi-judicial bodies of their respective counties. *See Bradley v. Payson City Corp.*, 2003 UT 16, ¶ 13, 70 P.3d 47; *Salt Lake County Cottonwood Sanitary Dist. v. Sandy City*, 879 P.2d 1397, 1383 (Utah 1994). Defendants contend that given the quasi-judicial nature of a board of appeals, it is an independent body that is not, standing alone, the county. As an example, Defendants assert that it would be unreasonable to suggest that a state court is "the state" or that this court is "the

7

federal government."

Plaintiffs, however, point out that reported decisions in Utah demonstrate that county attorneys often represent boards of appeal in lawsuits challenging the entity's decisions. *See, e.g., Save Our Canyons v. Board of Adjustment*, 2005 UT App 285; *Ludlow v. Salt Lake County Bd. of Adjustment*, 893 P.2d 1101 (Utah Ct. App. 1995). Defendants recognize there are cases where the county attorney represented the county board of appeals. *See* 2005 UT App 285. However, Defendants argue that the court in *Save Our Canyons* did not state or suggest that the county attorney had a duty to represent the Board of Appeals. And, in *Ludlow*, the court was only determining whether the neighbor, who obtained a variance, should have been named a co-defendant with the board of adjustment. *See* 893 P.2d 1101 (Utah Ct. App. 1995). Moreover, neither case involved a situation where the county took a position contrary to the board of appeals.

Defendants contend that even if this court were to conclude that the Board of Appeals is considered the County, an appeal taken from a decision of the Board of Appeals is not an action "against the county" because the appeal is brought by the challenging party and against the non-challenging party. The impartial, quasi-judicial body before which the parties appeared cannot be considered a real party in interest. *See Blauer v. Dept. of Workforce Servs.*, 2005 UT App 488, ¶ 26, 128 P.3d 1204 (quasi-judicial board cannot be allowed to "function as a litigant, taking an adversarial position [against] a party that had appeared before it in a quasi-judicial proceeding."); *see also Crosby v. Town of Belgrade*, 562 A.2d 1228, 1231 (Me. 1989) ("Because a board of appeals performs a quasi-judicial function, the parties to [an] action reviewing the board's decision are the parties that had appeared before the board.")

In this case, the real parties in interest are the developers and the McMillans. Defendants,

therefore, assert that this court should rule as a matter of law that the appeals taken from the Board of Appeals decision were not "against" the Board of Appeals. Factually, the County did not name the Board of Appeals as the adverse party, it named only the McMillans. Defendants, therefore, argue that the McMillans have no protectable property interest in the decision or in having the County Attorney defend the decision of the Board of Appeals. On the other hand, Plaintiffs argue that Defendants were not real parties in interest because the County did not own property affected by the Board of Appeals' decision and they could not be adversely affected by the Board of Appeals' decision. Accordingly, the County should not have filed its own challenge to the Board of Appeals' decision. Plaintiffs argue that they should not have had to defend against a challenge from the County and a challenge from the developers.

Even if this court agrees with the reasoning of the state court that it was improper under Utah state law for the County to appeal a decision of its own Board of Appeals, the McMillans' alleged damages relate to the County's decision not to provide a defense to the Board of Appeals' decision and the McMillans' resulting attorney fees. The Utah statutes do not specifically provide that the County must defend every decision of the Board of Appeals. The Board of Appeals is a quasi-judicial body and it is not the real party in interest to the appeal. In this case, the real parties in interest were the developers and Plaintiffs.

In addition, even if this court were to rule that appeals of the Board of Appeals' decisions are actions brought against the "county" and the county attorney must provide a defense, the McMillans have not established that Utah statutes provide them with a protectable property interest in this case. Nothing in the statute grants the public any protectable rights with respect to the appeal process. The court finds it significant that the McMillans did not make a request for the appointment of counsel to the County Council, the Board of Appeals, or the State District

9

Court. The state court could have addressed these issues in the appeal if the McMillans had timely raised them. Instead, the McMillans raised only the private attorney general doctrine in order to obtain an award of their attorney fees, and the state court denied attorney fees under that doctrine. The McMillans contend that they were limited in the arguments they could make before the state court, but the court finds no basis for such limitations. As part of their motion to dismiss the County's petition, the McMillans could have raised an argument that the County's appeal was not only statutorily improper but violated their rights.

Finally, even if the McMillans could establish a protected property interest, the County's appeal of the decision and failure to appoint counsel to defend the Board of Appeals' decision would need to shock the conscience of the court. "'The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Graves v. Thomas*, 450 F.3d 1215, 1220 (10th Cir. 2006). To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).

Mere negligence is clearly insufficient to meet this standard. *Ward v. Anderson*, 494 F.3d 929, 938 (10th Cir. 2007). And, even an intentional reckless abuse of power that causes the plaintiff injury does not, of itself, meet the "shocks the conscience" standard. *Id.* at 937-38. There must be "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* at 938. The D.C. Circuit has expressed that "[o]nly a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the

law that trammels significant personal or property rights, qualifies for relief." *Tri County Indus., Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997).

The McMillans claim that the County's conduct in challenging the Board of Appeals' decision and in not appointing counsel for the Board of Appeals, but requiring the McMillans to expend $70,000 to defend the Board of Appeals' decision, rises to that level of opprobrium. The McMillans contend that Defendants abrogated their statutory duties and did so in a manner explicitly intended to harm them. But the McMillans have not presented any evidence that Defendants' actions were based on an explicit intent to harm them. At most, the evidence demonstrates that the County was in favor of the development because it determined that the development was in the best interest of the county and, thus, the County took a position that was adverse to the McMillans' position. Evidence that the County took an adverse position on the development does not equate to evidence that the County intended to cause harm to the McMillans.

There is no evidence that Defendants' appeal of the Board of Appeals decision was even negligence. It is not entirely clear under Utah law whether Defendants were obligated to defend the Board of Appeals decision or appoint counsel. This is not a case where Defendants arbitrarily denied a request from the McMIllans to appoint counsel. Defendants were not even faced with this issue until they were required to defend the McMillans' claims in the present case. Accordingly, the court concludes that Defendants' conduct does not shock the conscience of the court.

*2. Issue Preclusion*

Defendants next argue that the McMillans' request for attorney fees in this action is barred by the doctrine of issue preclusion. The Tenth Circuit has stated that parties "are not

11

permitted to seek or collect their damages piecemeal." *Fox v. Connecticut Fire Ins. Co.*, 380 F.2d 360, 362 (10th Cir. 1967). Where parties have unsuccessfully requested attorney fees in a prior litigation, parties are barred from re-requesting those fees in a second litigation under principles of res judicata. *Id.* Issue preclusion, which Defendants argue is applicable here, "arises from a different cause of action and prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit. In effect, once a party has had his or her day in court and lost, he or she does not get a second chance to prevail on the same issues." *Buckner v. Kennard*, 2004 UT 78, ¶ 12. The Supreme Court has noted that issue preclusion "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

In Utah, issue preclusion "applies when the following elements are satisfied: (i) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (iii) the issue in the first action must have been completely, fully, and fairly litigated,; and (iv) the first suit must have resulted in a final judgment on the merits." *Oman v. Davis Sch. Dist.*, 2008 UT 70 ¶ 29, 194 P.3d 956.

The McMillans assert that the doctrine of issue preclusion does not apply in this case because they were not allowed to assert a civil rights claim in the state court action. The McMillans contend that the state court action was limited to an appeal of the Board of Appeals' decision and the issue was only whether the Board of Appeals' decision was arbitrary, capricious, or illegal. But the state action was not so limited with respect to the McMillans motion to dismiss the County's appeal. The issues raised in the motion to dismiss involved whether the

County had properly brought an appeal of the Board of Appeal's decision, not just whether the Board of Appeals' decision was correct. In making their arguments with respect to the impropriety of the County's appeal, the McMillans could have raised the issue that the County's conduct violated their rights. The McMillans, however, only sought attorney fees under the private attorney general doctrine.

In this case, the parties are the same and the McMillans are seeking payment of the same attorney fees. While the appeal to state district court involved whether the Board of Appeals' decision was correct, the McMillans raised the impropriety of the County's conduct in their motion to dismiss and had an opportunity to completely and fully litigate the issue of whether they were entitled to attorney fees based on that conduct. While the McMillans sought attorney fees under the private attorney general doctrine in the state court action and now seek them under a constitutional challenge in this case, the McMillans had the opportunity to assert any basis for fees in the state court action.

"Courts must look beyond form to address the substance of a claim" when the parties "attempt to cloak [their] claims as a constitutional challenge." *In re Knapper*, 407 F.3d 573, 585 (3d Cir. 2005). "It is not the identity of the thing sued for, or the cause of action, which determines the conclusiveness of a former judgment upon a subsequent action, but merely the identity of the issue involved in the two suits. If an issue presented in a subsequent suit between the same parties or their privies is shown to have been determined in a former one, the question is res judicata [or collateral estoppel], although the actions are based on different grounds, or tried on different theories, or are instituted for different purposes and seek different relief." *Collins v. Sandy City Bd. of Adjustment*, 2000 UT App 371, ¶ 13, 16. Accordingly, the court concludes that the McMillans' claim for attorney fees is barred by the doctrine of issue

preclusion.

Defendants also raised the issue of immunity from suit under this cause of action. Based on the court ruling with respect to the other two bases for summary judgment, the court concludes that it does not need to reach that issue. The court, therefore, concludes that Defendants are entitled to summary judgment on the McMillans' Section 1983 claim.

**B. Section 1985 Claim**

Defendants argue that the McMillans cannot establish a conspiracy aimed at interfering with their rights under Section 1985(3). The McMillans assert that they have evidence to meet the simple definition of a conspiracy–the combination of two or more persons acting in concert. But Section 1985(3) requires more than just a combination of two or more persons acting in concert. A plaintiff must prove "(1) conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993), *cert. Denied*, 510 U.S. 1093 (1994).

The Tenth Circuit has stated that "§ 1985(3) does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based invidiously discriminatory animus.'" *Tilton*, 6 F.3d at 686. Section 1985(3) "covers only conspiracies aimed at interfering with rights that are protected against private, as well as official, encroachment." *Id.*

After the McMillans won at the Board of Appeals, the County Attorney met with the developers. The McMillans contend that because the County Attorney should have been defending the Board of Appeals' decision against attack, his meeting with parties planning to challenge that decision is evidence of a conspiracy. Although the McMillans state that the

14

County Attorney and the developers agreed to appeal the Board of Appeals' decision, the testimony shows that each decided to appeal individually, whether or not the other appealed. Plus, each party filed a separate petition, not one joint petition that the parties agreed upon. There is no evidence that the two entities agreed to act in concert. Moreover, the McMillans do not allege that they are victims of racial or class-based discriminatory animus.

The McMillans rely on *Olech v. Village of Willowbrook* to argue that they are a "class of one." 528 U.S. 562 (2000). The First Circuit has determined that *Olech* applies only to equal protection claims, not to Section 1985(3) claims. *See Burns v. State Police Ass'n*, 230 F.3d 8, 12 n.4 (1st Cir. 2000). And, the Utah Supreme Court has held that with respect to "Section 1985(3) claims, we believe that the requirement that the requirement that claims be class-based survives the Supreme Court's decision in *Olech*." *Patterson v. American Fork City*, 2003 UT 7, ¶ 32, 67 P.3d 466. Plaintiffs rely on *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836 (10th Cir. 2005) to assert that *Olech* applies to Section 1985 claims. But *Mimics* in unhelpful because it involved a Section 1983 claim, not a Section 1985(3) claim. *See id.* at 838.

Even if this court decided to apply *Olech* to a Section 1985(3) claim, the McMillans would still need to show that the Defendants treated them differently than others similarly situated and that Defendants did so with malice. *Jenning v. City of Stillwater*, 383 F.3d 1199, 1211 (10th Cir. 2004). There is no evidence that the Defendants treated the McMillans differently than they treated other county residents and that such treatment was malicious. Accordingly, the court grants Defendants motion for summary judgment on the McMillans' Section 1985(3) claim.

**C. Section 1986 Claim**

The parties agree that a claim under Section 1986 cannot exists independent of a Section

1985(3) claim. *See Taylor v. Nichols*, 558 F.2d 561, 568 (10th Cir. 1977) ("There cannot be a valid claim under Section 1986 unless there is also a . . . valid Section 1985 claim."). Because the court has concluded that Defendants are entitled to summary judgment on the McMillans' Section 1985(3) claim, the court also grants Defendants' summary judgment motion with respect to the McMillans' Section 1986 claim.

## D. Takings Claim

With respect to their takings claim, the McMillans argue that Defendants' petition challenging the Board of Appeals' final decision was necessarily a "substantial interference with [the McMillans' property interest in the decision] which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed." *Colman v. Utah State Land Bd.*, 795 P.2d 622, 626 (Utah 1990).

In this case, however, it is not clear under Utah law whether the McMillans, in fact, have a property interest in the Board of Appeals' decision. The law clearly allows the Board of Appeals' decision to be appealed to the state district court and there was nothing inappropriate about the developers' appeal of the decision. The McMillans defended the decision and obtained a successful result. Any accompanying losses, such as attorney fees, were only incidental to the McMillans' defense of the Board of Appeals' decision. Therefore, the court finds no basis for a takings claim under Utah law.

## E. Negligence Claim

The McMillans argue that their negligence claim should survive summary judgment because the County had a duty to defend the Board of Appeals' decision and it breached that duty. Defendants, however, dispute whether they had a duty under Utah law to defend the Board of Appeals' decision.

Utah law states that "any person" adversely affected by a final decision of the Board of Appeals may file a petition for review in the district court. Utah Code Ann. § 17-27a-801(2)(a). The statute then defines a "person" as "an individual, corporation, partnership, organization, association, trust, governmental agency, or any other legal entity." *Id.* § 17-27a-103(34). As a governmental agency or other legal entity, there would not appear to be any law precluding the County from being able to petition for a review of its decision. But, the McMillans argue that other language in the statute stating the decision of the Board of Appeals' is the final decision of the County precludes the County from appealing the decision. *See id.* § 17-27a-701(3)(a)(ii) (Board of Appeals is "the final arbiter of issues involving the interpretation or application of land use ordinances."). Defendants argue that the statutory language relied on by the McMillans uses the term "final" only in the sense that no further administrative decisions need to occur before an appeal is taken to the court.

The state district court, however, agreed with the McMillans and concluded that the County could not appeal the Board of Appeals' decision. The state district court, however, did not need to determine whether the statute established a duty to third parties not to appeal. A discussion regarding the proper role and function of the governmental entities under the statute differs from a determination of whether the statute establishes a duty with respect to third parties. Because this court concludes that the language of the statute is unclear as to whether the County could appeal, the court finds that the statute provides no clearly defined duty not to appeal.

## F. Qualified Immunity Defense

Finally, Defendants argue that to the extent the McMillans bring their claims against the individual Defendants in their personal capacities, the individual Defendants are entitled to qualified immunity because the McMillans have not demonstrated that they violated a clearly

17

established right. "To prevail on summary judgment against a defendant who asserts a defense of qualified immunity, a 'plaintiff must show that (1) the official violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established when the alleged violation occurred.'" *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 841 (10th Cir. 2005) (citation omitted).

> Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional. 'The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains.' To be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 842 (citations omitted).

In this case, the court concludes that the individual Defendants are entitled to qualified immunity to the extent that they are sued in their personal capacities because the alleged unlawfulness of their conduct, if it was in fact unlawful, was not apparent at the time of the events. This court concludes that it is not clear under the Utah statute whether the County could appeal the Board of Appeals' decision, whether the County was required to defend the Board of Appeals' decision, and whether the County owed any duty to third parties who received a favorable ruling from the Board of Appeals.

The state district court's determination that the County could not bring an appeal of the Board of Appeals' decision was based on the statutory language providing that the Board of Appeals is the final arbiter for the County on land use questions. The parties in this action,

18

however, have demonstrated competing definitions for the meaning of "final arbiter" under the Utah state. Whether that statutory language was intended to preclude a county from bringing an appeal of its Board of Appeals' decision or was intended to establish that all administrative remedies had been exhausted as a result of the Board of Appeals' decision was not clearly established at the time of the events that occurred in this case.

Plaintiffs also argue that the duties of the County Attorney were clearly established at the time of the events in this case. The duties, however, were clearly established only insofar as requiring the County Attorney to take direction from the County. Whether the County was defined as the County Council or the Board of Appeals, which has been recognized as an independent quasi-judicial body under Utah case law, was not clearly established. The court, therefore, grants the individual Defendants qualified immunity.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is DENIED, and Defendants' Motion for Summary Judgment is GRANTED. Because this ruling disposes of all of the claims at issue in the case, the Clerk of Court is directed to close the case and enter judgment in favor of Defendants. Each party shall bear its, his, or her own costs.

DATED this 28th day of April, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge